IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LAQUESHA PIPKINS,
o/b/o QUONDARYUS LOUIS PIPKINS                                      PLAINTIFF

V.                    CASE NO. 4:21-CV-00170 BSM-JTK

KILOLO KIJAKAZI, Acting Commissioner of
SOCIAL SECURITY ADMINSTRATION[1]                                    DEFENDANT

## RECOMMENDED DISPOSITION

**I.   Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to District Judge Brian S. Miller. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**II.  Introduction:**

Pipkins filed a complaint seeking judicial review of an Administrative Law

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

Judge's ("ALJ") decision finding that her son, Quondaryus Louis Pipkins ("QLP"), was not disabled. (Doc. No. 2).

QLP was born on December 13, 1999, and he received supplemental security income benefits based on disability as a child. (Tr. at 9-19). Once QLP turned 18 on December 12, 2017, eligibility for continuing benefits was redetermined. (Tr. at 9). It was determined that QLP was no longer disabled as of May 17, 2018. *Id.*; (Tr. at 55-57). Pipkins requested agency review of that decision on September 25, 2018. (Tr. at 58). The decision was upheld by a state-agency Disability Hearing Officer after a hearing, at which Pipkins and QLP failed to appear. (Tr. at 62-74).

Pipkins requested a hearing by an ALJ but declined to appear in person at the hearing, and she asked for the ALJ to make a decision based on the evidence in the record. (Tr. at 78). On July 12, 2019, the ALJ determined that QLP's childhood disability ended on May 17, 2018. (Tr. at 19). The decision now stands as the final decision of the Commissioner, and Pipkins has requested judicial review on behalf of QLP. For the reasons stated below, the Court should affirm the decision of the Commissioner.

### III.   The Commissioner's Decision:

An ALJ must follow the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination

of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

For redetermination cases, Step One is not used. (Tr. at 10). The ALJ found, at Step Two, that since May 17, 2018, QLP had the following severe impairments: headaches and Oppositional Defiant Disorder. 20 C.F.R. §§ 404.1520(c) and 416.920(c); (Tr. at 11).

At Step Three, the ALJ determined that QLP's impairments did not meet or equal a listed impairment. (Tr. at 12). Before proceeding to Step Four, the ALJ determined that Pipkins had the residual functional capacity ("RFC") to perform work at the medium exertional level, except that the work must be unskilled, where interpersonal contact is incidental to the work performed and the complexity of tasks is learned and performed by rote, with few variables, little judgment, and the supervision requires is simple, direct, and concrete. (Tr. at 14).

The ALJ found that QLP had no past relevant work. (Tr. at 18). At Step Five, the ALJ considered QLP's RFC, age, education, and work experience to find that

there were jobs in significant numbers in the national economy that he could perform.[2] (Tr. at 19, 73-74). Therefore, the ALJ found that QLP's disability ended on May 17, 2018, and he has not become disabled since that date. (Tr. at 19).

## IV. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of

---

[2] The ALJ used Medical-Vocational Guideline rule 203.28 as a guide, which directs a finding of "not disabled." 20 CFR Part 404, Subpart P, Appendix 2. The Disability Hearing Officer found that jobs existed that QLP could perform, such as addresser, tube operator, and document preparer, and the ALJ confirmed that finding. (Tr. at 19, 73-74).

administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.   Pipkins's Arguments on Appeal

Pipkins appears *pro se* in this matter. She submitted a short letter on May 11, 2022, claiming that QLP was still disabled. (Doc. No. 20). She mostly discussed impairments from QLP's remote childhood. *Id*.

Pipkins filled out a function report on March 21, 2018. (Tr. at 150-157). In the report, she said that QLP could do things like go to church, school, and the barber shop; shop in stores; watch TV and play games; attend to personal care; and pay bills

5

and count change. *Id*. Such daily activities undermine QLP's claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

While Pipkins alleges that QLP is disabled mentally, the results of a mental diagnostic evaluation suggest otherwise. In April 2017, psychologist Cynthia Dupuis, Ph.D., examined QLP. (Tr. at 303-308). QLP denied symptoms of depressed mood or anxiety and said that he had not received psychiatric treatment since age 10.[3] *Id*. QLP had no impairment in language function according to Dr. Dupuis. *Id*. He had logical and goal-directed thoughts. While Dr. Dupuis diagnosed Oppositional Defiant Disorder, she noted that ALP was independent in most activities of daily living. *Id*. She concluded that QLP was not limited in communicating, understanding instructions, or attending and sustaining concentration. (Tr. at 308). Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

On March 27, 2018, QLP had a wellness examination with Salil Mathur, M.D. (Tr. at 355-359). While QLP had a Sucrose Isomaltose Deficiency, he took Sucraid to manage symptoms, and admitted that he had a good appetite and enjoyed chicken,

---

[3] QLP received mental health treatment from November 2017 through November 2018, at which point he was discharged for non-compliance. (Tr. at 322-335, 407-486). He missed several appointments, phone calls, and home visits by the therapist. *Id*. However, in April and July 2018, QLP had grossly normal mental status examinations. (Tr. at 411, 442).

pork chops, chips, donuts, and candies. (Tr. at 359-361); (Doc. No. 20). He was well-nourished and in no acute distress, and he had high self-esteem and body image. *Id*. He played sports and had many friends. *Id*. He took medication for headaches, but required no other treatment for headaches. *Id*. The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

On March 26, 2018, QLP's math and science teacher completed a questionnaire, in which she noted that he had no problems acquiring or using information, interacting or relating with others, or caring for himself. (Tr. at 342-345). She said he was very independent, had enrolled in a Fire Cadet course, and was doing well in that course. (Tr. at 348). She noted a mild learning disability, but said that it did not prevent QLP from achieving his goals. *Id*.

The Disability Determination Services psychiatric and medical experts reviewed the records and found that QLP was capable of medium exertional work with the mental limitations expressed in the RFC. (Tr. at 376-404). The ALJ found these opinions persuasive. (Tr. at 18). The Court finds no error in this determination; Pipkins has not shown that the RFC failed to incorporate QLP's credible limitations, or that it outstripped QLP's abilities. The evidence in the record shows minimal treatment, normal examinations, and few limitations on work activity or daily

activities.

## V. **Conclusion**:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ fairly considered the medical and opinion evidence, and the RFC incorporated QLP's credible limitations. The finding that QLP was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 7th day of July, 2022.

_____
UNITED STATES MAGISTRATE JUDGE